UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William H. Walls |
| | : | Crim. No. 17-221 (WHW) |
| v. | : | |
| NIKOLAY KRECHET | : | |

**REPLY MEMORANDUM OF THE UNITED STATES
OF AMERICA IN FURTHER SUPPORT OF ITS
MOTIONS *IN LIMINE***

CRAIG CARPENITO
United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
(973) 645-2742

On the Memorandum:

David W. Feder
Joshua L. Haber
Assistant United States Attorneys

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i
TABLE OF AUTHORITIES ......................................................................................................... ii
I.    The Invoice Evidence Is Admissible under Rule 404(b). ................................. 1
II.   The Court Should Bar Any Inquiry into the Circumstances of Reyn's Arrest on Charges Later Dismissed. ..................................................................... 6
CONCLUSION .............................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Huddleston v. United States,*
  485 U.S. 681 (1988) ............................................................................... 6

*United States v. Ferriero,*
  866 F.3d 107 (3d Cir. 2017) .................................................................... 3

*United States v. Freeman,*
  763 F.3d 322 (3d Cir. 2014) .................................................................... 7

*United States v. McKee,*
  506 F.3d 225 (3d Cir. 2007) .................................................................... 3

*United States v. O'Leary,*
  739 F.2d 135 (3d Cir. 1984) .................................................................... 4

*United States v. Stewart,*
  433 F.3d 273 (2d Cir. 2006) .................................................................... 7

*United States v. Washington,*
  602 F. App'x 858 (3d Cir. 2015) ............................................................. 5

*United States v. Williams,*
  464 F.3d 443 (3d Cir. 2006) .................................................................... 7

**I.     The Invoice Evidence Is Admissible under Rule 404(b).**

The Government seeks to introduce evidence that defendant Nikolay Krechet asked cooperating witness Edgar Reyn for an invoice reflecting the sale of MacBook computers in January 2015. The MacBooks in question were seized in Virginia after authorities arrested two of Krechet's alleged co-conspirators for attempting to return stolen property. Krechet's recorded request reflects that he sought a phony invoice to dupe the Virginia authorities and secure the MacBooks' release. As the Government explained in Point I of its opening brief, the Invoice Evidence:

- is contemporaneous proof of knowledge—that Krechet was well-aware of Reyn's dubious business practices when he repeatedly bought hundreds of thousands of dollars in stolen gift cards from Reyn; and

- provides critical background for Krechet's statements about the invoice and his alleged co-conspirator Pavel Ostapenko during a recording of the March 13, 2015 transaction and during his post-arrest statement.

The Invoice Evidence is highly probative of these permissible Rule 404(b) purposes, which are relevant to the knowledge and conspiracy questions at the heart of this prosecution. It also carries little risk of "unfair prejudice," particularly when coupled with an instruction that will confine its use to these permissible purposes.

Krechet raises no legal argument to the Invoice Evidence and challenges neither of the non-propensity purposes advanced by the Government. He also readily admits he asked for the invoice to secure the MacBooks' return. *See* Brief in Support of Defendant Nikolay Krechet's Pretrial Motions *in Limine* ("KB") at 5. Instead, Krechet attempts a purely factual objection, arguing the Government

failed to place the Invoice Evidence in its "proper context." KB4. On his reading of the transcript, Krechet insists he was asking Reyn for a "legitimate invoice." KB5. That conclusion is simply not supported by the evidence, which—in any event—the jury is capable of weighing. The Government offers the following responses to Krechet's dubious factual arguments.

*First*, the transcripts of the January 30, 2015 calls make clear that Krechet sought a phony invoice and that it did not matter to him who provided it. Reyn told Krechet at the outset that his "Manhattan [person] . . . does not want to do the invoice for me." Exhibit to the Government's Brief in Support of Its Motions *in Limine* ("GX") 3 at 2. Krechet responded that he needed to "come up with" something and asked Reyn to "do [it] from some company of yours." GX3 at 3. This demonstrates that Krechet was comfortable with an invoice originating from one of two sources: the "Manhattan" person or Reyn. But if the MacBooks were purchased legitimately, only one seller could provide documentation of the sale.

Their later conversation confirms that Krechet was entirely ambivalent about the source, so long as it came from a "real company," GX3 at 3:

> Reyn:     Well, tell me what to do, [and] I'll do [it]. Well . . . I . . . I do not know.
>
> Krechet:  *Invoice* from any company, which is engaged in this business.
>
> Reyn:     Not from the actual one, from any company, right?
>
> Krechet:  Yes.

GX3 at 5. Again, if Krechet sought a real invoice from Reyn documenting an actual sale, he would not have been open to an invoice "from any company."

Krechet now claims the fact that he and Reyn did not use words like "fraudulent" or "counterfeit" negates any ill-intent. KB3-4. But "[a]ssessing whether a communication is fraudulent, truthful, or otherwise is a highly contextual inquiry," *United States v. Ferriero*, 866 F.3d 107, 120 (3d Cir. 2017), *cert. denied*, No. 17-994, 2018 WL 466508 (Feb. 20, 2018), and does not depend on the utterance of magic words, *see United States v. McKee*, 506 F.3d 225, 238 (3d Cir. 2007) (direct evidence of conspiratorial agreement not required). Nor would using such words be necessary or advisable in a conversation between two knowing participants in a stolen goods ring.[1]

*Second*, Krechet needed Reyn's help because of the very real and acknowledged risk that his fraud might be detected. Krechet wanted an invoice "from a real company," GX3 at 3, because he knew the authorities would check up on it. Krechet warned: "If someone checks anything, and this paper does not work, it will be bad," GX3 at 7. Thus, contrary to Krechet's claim, he and Reyn did "discuss the consequences of their ruse being discovered." KB5. Krechet explicitly acknowledged the possibility that if something "goes wrong, people can go into jail." GX3 at 4. This also explains why Krechet was not "capable of creating" an invoice on his own, KB8—he needed someone to answer the phone

---

[1] That said, during the second recorded call on January 30, 2015, an unidentified speaker responded to Reyn's (apparently joking) demand for $100 by saying, "we have *counterfeit* ones." GX4 at 5 (emphasis added). Krechet clarified, "Actually, we no longer do." GX4 at 5. Even if in jest, the exchange only bolsters the Government's allegation that Krechet and Reyn were well-acquainted with the black market.

3

to validate the invoice: "[T]here should be a phone number and . . . one could call. Are there notebooks? Yes. There is a notebook," GX3 at 6. Indeed, Krechet was appreciative when Reyn agreed to provide the invoice in spite of the risk and swore to return the favor: "do something of this kind, and in the nearest . . . I am . . . there." GX3 at 10. Securing documentation for a routine, above-board transaction seldom requires such gratitude.

*Third*, contrary to Krechet's claim, KB6, the fact that Krechet and Reyn quibbled over how the invoice should report quantity, cost, and method of payment signifies the sham nature of the request, *see* GX4 at 4-5. The contents of a real receipt from a legitimate vendor would not vary after the transaction transpired. Krechet's concern that the price inflation might signal an intent to deceive Apple when returning the MacBooks, KB5, is beside the point and not an issue the Government intends to probe.

*Fourth*, whether Reyn actually sold Krechet the MacBooks is actually irrelevant for the non-propensity uses the Government intends. The Government seeks to introduce the Invoice Evidence to establish Krechet's knowledge that Reyn was a black market operator, willing to do things like fabricate bills of sale to dupe authorities. That Krechet was willing to enlist Reyn in the first place strongly suggests he knew or should have known that the gift cards he bought from Reyn at around the same time were highly suspect. *See United States v. O'Leary*, 739 F.2d 135, 137 (3d Cir. 1984) (approving admission of Rule 404(b) evidence "similar to the crimes accused and proximate to them in time"). Of

4

course, Krechet's admission that he purchased the MacBooks from Reyn, KB4—and yet was willing to accept an invoice from "any company" to document that purchase—only strengthens the knowledge inference.

*Fifth*, the Invoice Evidence is probative of the alleged *gift card* conspiracy between Krechet and Ostapenko and gives context for Krechet's subsequent references to Ostapenko. The Government expects to introduce evidence at trial that Ostapenko and others conspired with Krechet to purchase stolen gift cards and redeem them for merchandise that Krechet then sold for a profit. That evidence is bolstered by proof that Krechet produced a fraudulent invoice to give to Ostapenko's lawyer. It underscores their joint participation in illicit commerce and that Krechet was willing to risk sending Ostapenko a fraudulent document. *See United States v. Washington*, 602 F. App'x 858, 863 (3d Cir. 2015) (affirming admission of Rule 404(b) evidence that established a "relationship of trust" between alleged co-conspirators). To that end, it is irrelevant whether there is direct proof that the MacBooks were stolen or whether Ostapenko pled to a lesser charge without admitting they were. Rather, the jury should be permitted to consider, based on the invoice, that their business relationship was infected by fraud, particularly because Krechet twice referred to Ostapenko and the invoice in recorded statements.[2]

---

[2] The Government did not use the word "oblique" regarding Krechet's references to Ostapenko in an effort to "dirty up" Krechet, as Krechet claims. KB6. Rather, the Government meant to convey that the jury required context to understand those passing mentions "in a conversation with people who knew Ostapenko." The Invoice Evidence would supply that context.

5

Accordingly, when placed in its "proper context," KB4, the Invoice Evidence demonstrates that Krechet sought a phony—not a real—invoice from Reyn. The portions of transcripts cited in the Government's papers, coupled with the other supporting evidence, satisfy Rule 104(b)'s requirement of proof "sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). The Government has met its "minimal" burden of proffering enough that the "jury could reasonably find" that the invoice was fraudulent "by a preponderance of evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

Moreover, the Invoice Evidence is highly probative of perhaps the most important issue at trial—whether Krechet knew or had reason to know that the gift cards he bought from Reyn were stolen property. And, particularly when coupled with an appropriate limiting instruction, there is minimal risk of unfair prejudice, much less enough to substantially outweigh the evidence's clear probative value, as required for exclusion under Rule 403.

## II. The Court Should Bar Any Inquiry into the Circumstances of Reyn's Arrest on Charges Later Dismissed.

Reyn was arrested by the New York Police Department in May 2017 and charged with possession of stolen property in violation of New York state law (the "May 2017 Arrest"). GX8. All charges pertaining to that arrest have been dismissed. Evidence of Reyn's arrest is plainly inadmissible. As the Government explained in Point II of its opening brief:

- the offense for which Reyn was arrested—fifth degree possession of stolen property—does not require proof of lying, deceit, or dishonesty; and

6

- there is no indication that Reyn lied or made false statements about the May 2017 Arrest.

Therefore, because the May 2017 Arrest did not touch on Reyn's truthfulness, no justification exists for Krechet to cross-examine him about it. Fed. R. Evid. 403, 608(b); *United States v. Freeman*, 763 F.3d 322, 342 (3d Cir. 2014); *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006). This issue is now moot: Krechet admits that the evidence does not go to Reyn's "general propensity for truthfulness." KB7. As for Krechet's other proposed, potential use of the arrest on cross-examination to inquire into alleged preferential treatment, KB7-8, the Government submits that any reference to the arrest is either irrelevant under Rule 401 or more prejudicial than probative under Rule 403, particularly given the other avenues for inquiring as to the benefits of cooperation. *See United States v. Stewart*, 433 F.3d 273, 313 (2d Cir. 2006) (finding that "the jury was already in possession of sufficient information to make a discriminating appraisal" of a cooperating witness's motives without inquiry into the witness's alleged use of marijuana after agreeing to cooperate).

**CONCLUSION**

For all of the reasons set forth above and in the moving brief, the Government submits that the Court should grant the Government's motions *in limine*.

Respectfully submitted,

CRAIG CARPENITO
United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
(973) 645-2742


By: /s/ *David W. Feder*
    David W. Feder
    Assistant U.S. Attorney

By: /s/ *Joshua L. Haber*
    Joshua L. Haber
    Assistant U.S. Attorney

Dated:   Newark, New Jersey
         March 22, 2018